[No. 19844.   Department One.   May 28, 1926.]

C. H. HANSEN *et al., Respondents,* v. G. E. PARKS *et al., Appellants.*[1]

[1] LIBEL (40)—ACTIONS—INSTRUCTIONS—LIBEL PER SE.  In an action for libel through the admitted publication of articles libelous *per se,* in which there was no proof of the truth of the articles, the plaintiffs are entitled to an instruction in their favor for at least nominal damages and it is error to give contradictory instructions to the effect that the jury could give them substantial or nominal damages or bring in a verdict for either party.

[2] LIBEL (6)—ACTIONABLE WORDS PER SE—EXPOSING PERSONS TO HATRED, CONTEMPT OR RIDICULE.  A newspaper article charging a burglarious entry by the breaking of a door and stealing certain papers, is libelous *per se,* as tending to subject the person charged to hatred, contempt and ridicule, within Rem. Comp. Stat., § 2424, notwithstanding the text of the articles show that the papers taken were of no value.

Appeal from an order of the superior court for Thurston county, Wilson, J., entered November 2, 1925, granting plaintiffs a new trial in an action for libel,

[1]Reported in 246 Pac. 584.

after the verdict of a jury rendered in favor of the defendants. Affirmed.

*Vance & Christensen* and *P. C. Kibbe,* for appellants.

*Frank C. Owings* and *Thos. L. O'Leary,* for respondents.

ASKREN, J.—This is an action for damages based on the publication of an alleged libelous article. The case was tried to a jury, which returned a verdict in favor of the defendants. The court granted a new trial, and the defendants appeal.

The facts follow: In the issue of May 15, 1925, of the Tenino Independent, a newspaper published at Tenino, Washington, there was printed this article under a double column head:

"OLYMPIA POLICE CHIEF ACCUSED OF BURGLARY
"Rear Door of Independent Office Forced Open and
Papers Stolen from the Shop Files.

"The rear door of the Tenino Independent office was broken some time Saturday night and the shop entered and some papers taken from the files. The information available points to the chief of police and one of his officers of Olympia as the guilty parties.

"According to the information at hand, plans were made in Olympia at police headquarters about 12 o'clock Saturday night to come to Tenino after the papers. Hansen, another officer and a third party drove to this city.

"The papers taken from the office were copy for a poster printed in the shop several days before, the job ticket, and possibly the order for the same. They were of no value to this office and would have been furnished the police chief, or any one who would have asked for them during business hours.

"When the car in which these officers came to Tenino arrived, it was parked in front of the New Home hotel. The occupants did not leave the car until the night marshal was seen to go toward the other end of town.

"The chief, when asked what he would do if the mar-

shal stopped them, said that he could fix it all right
with him. Those who know the night marshal know
how it would have been fixed had they been caught in
the act. It would all have been a different story, no
doubt.

"The sworn statement as to what happened, on file
in this office, says: 'That after midnight Saturday
night Chief Hansen of Olympia and another asked him
if he could get the copy for a poster that said G. E.
Parks printed regarding the city election in Olympia
just preceding this date, and deponent said he thought
Mr. Parks would let him have it, but the three of them,
deponent, chief Hansen and the other man drove to
Tenino, and the other man broke open the back door,
while Chief Hansen held a flash light. They broke
into the Tenino Independent office and said Chief of
Police Hansen secured the job ticket including copy for
said poster and put it in his pocket and took it away
with him.

" 'Said Chief of Police Hansen told deponent he
should not go to Mr. Parks for the keys and so said
Hansen and said other man broke in as before stated'."

Along side of this article appeared the following
double column article:

"OPEN LETTER TO ATTORNEY GENERAL OF WASHINGTON.
"Hon. John H. Dunbar,
"Attorney General, State of Washington
"Olympia, Wash.
"Dear Sir:

"Will you kindly inform me if a chief of police of a
city of the third class has power to go to another town
and break into a private business place in the middle
of the night without a warrant?

"My place of business was broken into last Saturday
night and some papers stolen from my files and other
damage done to the place. All I can find out about this
outrage is from an employe of the Independent, who,
in company with some prominent men of Olympia, in-
cluding a county official, were taken in charge Satur-
day night by the Olympia police, and were all released
but this employee, who was threatened with a jail sen-

tence unless he would deliver certain papers from The Independent office.

"The Chief of Police and another police officer, together with this employee above mentioned came to Tenino. They were unable to get into the shop without breaking the door, which they did, the officer doing the work and Chief Hansen holding the light, according to a sworn statement made by this employee. They then entered the shop and took the papers they desired, returning to Olympia, but leaving the employee of the Independent in Tenino, who returned to Olympia the following day and had the articles returned to him taken from his person by the police the evening before.

"Has the Chief of Police of Olympia a right to burglarize my place within the county without a warrant? Your office, I am sure, can tell me just how far a chief of police can go.          Very truly yours,

"The Tenino Independent,
"By G. E. Parks, Publisher."

Respondents, C. H. Hansen and wife, thereupon brought suit against appellants Parks as publisher of the paper, alleging the malicious publication of the articles in question. They further allege that the statements so made were false and defamatory; that the articles tended to expose plaintiffs to hatred, contempt, ridicule, obloquy, and to deprive them of the benefit of public confidence and social intercourse. They prayed for damages in the sum of five thousand dollars. The answer denied any malicious publication of the articles, and alleged that the appellant Parks believed the things stated in the published article to be true.

At the trial, respondents offered evidence of the effect of the article on the feelings of C. H. Hansen, and rested. In defense, appellants sought to show that they were unacquainted with either of respondents, and that the statements made in the articles were believed to be true at the time they were made, and therefore were not malicious. The cause was submitted to the

jury without further testimony. The jury returned a verdict in favor of the defendants, and a motion for a new trial was made by respondents upon three different grounds: first, error in law occurring at the trial; second, insufficiency of the evidence, and that the verdict was against law; third, irregularity in the proceedings.

The court granted the motion for a new trial by an order general in its wording, and, under our oft-repeated decisions, if any of the grounds for a new trial were tenable the court's order must be affirmed.

[1] The record presents many questions, which respondents had a right to urge upon the trial court in support of their motion for a new trial, but we need not refer to any of them save one. The court held that the published article was libelous *per se,* and instructed the jury that they could return a verdict in substantial damages for the respondents, but, in any event, that they should at least find in their favor in a nominal sum. The court further instructed the jury that it could return a verdict in favor of either the respondents or the appellants. It is apparent, of course, that these instructions were contradictory. If the article was libelous *per se* and there was no proof of the truth of the defamatory matter in the published article, then the respondents were entitled to a verdict in some amount, and the instruction to the effect that a verdict could be returned in favor of either of the parties was incorrect.

[2] In support, however, of appellants' claim that these instructions were not error, it is claimed that the article was not libelous *per se.* It is said that, while the banner reading "Olympia Police Chief Accused of Burglary," and the subhead underneath, "Rear door of Independent office forced open and papers stolen from shop files," charge the commission of a crime, yet

the facts stated in the reading matter of the article demonstrate that what respondent was charged with doing was not, in legal effect, a crime. It is said that, in the body of the article, it is stated that the things taken "were of no value to this office and would have been furnished the police chief or anyone who would have asked for them during business hours," that therefore the crime of burglary was not actually committed inasmuch as no thing of value was taken. But we think this is not such a case as calls for any refined distinctions as to what constitutes a legal charge of burglary. The article charges the burglarious entry for an unlawful purpose. In any event, it charges the breaking down the door, and the stealing of certain papers and doing other things, things in themselves unlawful, and we think tend to subject the person charged to hatred, contempt, ridicule and obloquy under Rem. Comp. Stat., § 2424 [P. C. § 8953]; *Graham v. Star Publishing Co.,* 133 Wash. 387, 233 Pac. 625.

We think the trial court was right in holding that the published articles were libelous *per se,* and, since the instructions were contradictory, the order granting a new trial must of necessity be, and it is, hereby affirmed.

TOLMAN, C. J., HOLCOMB, FULLERTON, and BRIDGES, JJ., concur.